**Talmadge W. HAYES, Plaintiff,**

v.

**COMMUNITY GENERAL OSTEOPATHIC HOSPITAL, and Bert McBrayer, Defendants.**

**Civ. A. No. 1:CV–89–1600.**

United States District Court, M.D. Pennsylvania.

Feb. 21, 1990.

**1334**

Elliot A. Strokoff, Strokoff & Cowden, P.C., Harrisburg, Pa., for plaintiff.

Vincent Candiello, Morgan, Lewis & Bockius, Harrisburg, Pa., for defendants.

## MEMORANDUM

CALDWELL, District Judge.

■ Pursuant to Fed.R.Civ.P. 12(b)(6), defendants, Community General Osteopathic Hospital (CGOH) and Bert McBrayer, have filed a "motion for partial dismissal," seeking to dismiss count II of plaintiff's complaint.[1] Plaintiff's two count complaint alleges he was discriminatorily discharged from employment with CGOH because of race. Count I is based upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and count II on 42 U.S.C. § 1981. Defendants argue that in light of the Supreme Court's decision in *Patterson v. McLean Credit Union,* — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), plaintiff has no cause of action under sec-

tion 1981 for his discriminatory discharge claim.

According to the complaint, plaintiff, Talmadge Hayes, a black male, was employed by defendant CGOH as its purchasing manager. He was the only black management employee, and had been employed by CGOH for over 19 years. Plaintiff alleges that he was discriminatorily discharged from his employment after his immediate supervisor, defendant McBrayer, accused him of misrepresenting his reasons for taking a paid personal day off from work. (complaint, ¶ 9). Plaintiff further alleges that defendant CGOH, in addition to terminating him because of his race, also on the basis of racial animus, failed to provide plaintiff with due process and an unbiased and unprejudiced hearing in accordance with the procedures set forth in the CGOH Personnel Policy and CGOH Personnel Policy Handbook (complaint ¶¶ 12, 29).[2]

Defendants' argue that under *Patterson,* plaintiff's allegations of discriminatory discharge do not state a cause of action under § 1981 since such conduct does not implicate his right to make or enforce contracts within the meaning of the statute. In *Patterson,* the Supreme Court clarified the scope of § 1981 in redressing racial discrimination. The section offers two protections. It protects: 1) the right to make contracts; and 2) the right to enforce contracts.[3] In discussing the right to make contracts, the Court stated that this right "does not extend, as a matter of logic or semantics, to conduct by the employer af-

---

1. The defendants' motion for a partial dismissal of count II is in effect a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) since defendants filed an answer along with the motion. A motion for judgment on the pleadings should be granted only if there is no issue of material fact and if the pleadings show that the moving party is entitled to judgment as a matter of law. The trial court is required "to view the facts presented in the pleadings and inferences to be drawn therefrom in the light most favorable to the non-moving party." *See Society Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1058 (3d Cir. 1980) (quoted treatise omitted). We believe this requires us to accept the allegations of the complaint where they are in conflict with the answer. *See Jones v. Loque,* 615 F.Supp. 442 (W.D. Pa.1985).

2. As we read the complaint, it is unclear whether plaintiff was denied a hearing altogether, or whether the hearing given did not afford plaintiff the requisite due process because it was tainted by racial bias. We need not resolve this ambiguity for the purposes of this motion.

3. Section 1981 reads as follows:

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

ter the contract relation has been established." —— U.S. at ——, 109 S.Ct. at 2372–73, 105 L.Ed.2d at 150–51. Thus, post-formation conduct such as breach of contract, or the imposition of discriminatory working conditions, does not implicate the right to make a contract and is therefore not within the scope of the statute's first protection. *See id.*

■ Based upon the foregoing analysis, although *Patterson* did not specifically address the issue of whether an alleged discriminatory discharge is actionable under § 1981, courts construing *Patterson* have embraced an interpretation of the section which excludes discharge from its protection for the making of contracts. *See, e.g., Hall v. County of Cook,* 719 F.Supp. 721 (N.D.Ill.1989); *James v. Dropsie College,* 1989 WL 143171 (E.D.Pa.); *Owens v. Foot Locker,* 1989 WL 138839 (E.D.Pa.); *Eklof v. Bramalea Ltd.,* 1989 WL 129357 (E.D. Pa.); *Leong v. Hilton Hotels Corp.,* 1989 WL 116880 (D.Haw.1989); *Copperidge v. Terminal Freight Handling Co.,* 1989 WL 112829 (W.D.Tenn.1989). There are cases to the contrary. Plaintiff cites *Padilla v. United Airlines,* 716 F.Supp. 485 (D.Colo. 1989) and *Asare v. Syms, Inc.,* 1989 WL 113162 (E.D.N.Y.) in support of his contention that termination affects the making of a contract and is thus actionable under section 1981. We disagree with these cases. We think the better rule was stated by the court in *Hall, supra,* 719 F.Supp. at 723–24. We therefore reject plaintiff's contention that a racially motivated discharge is actionable under section 1981 as interfering with the right to make a contract.

Plaintiff argues that a discriminatory discharge creates "a much more dramatically new and distinct relation between the employee and the employer than does a promotion," and thus should be deemed related to the employee's ability to make or enforce an employment contract. (plaintiff's memorandum in opposition to defendants' motion for partial dismissal at p. 8). This contention is based upon language in *Patterson* indicating that a failure to give a promotion may be actionable under section 1981. But the Supreme Court recog-

nized this possibility only when "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." —— U.S. at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. Admittedly, subsequent language was more broad: "Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." *Id.* at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. But it was clearly tied into the need for a new contractual relationship. *See Malhotra v. Cotter and Company,* 885 F.2d 1305, 1311 (7th Cir.1989) ("The Court's reference to contract and its citation to *Hishon* [*v. King & Spalding,* 467 U.S. 69, 81 L.Ed.2d 59 (1984)] suggest that in deciding whether a promotion would create 'a new and distinct relation between the employee and the employer,' the focus of inquiry should be on whether the promotion would change the terms of the contractual relationship between the employee and the employer."). A discharge does not create a new and distinct contractual relationship. To the contrary, it destroys and terminates any prior relationship. Accordingly, a discharge claim is untenable under section 1981. *See also Jordan v. U.S. West Direct,* 716 F.Supp. 1366 (D.Colo.1989) (wrongful demotion not actionable under § 1981); *Alexander v. New York Medical College,* 721 F.Supp. 587 (S.D.N.Y.1989) (demotion and then discharge not actionable under section 1981).

■ Plaintiff also argues that the discharge comes within the other prong of section 1981—the right to enforce contracts. In *Patterson,* the Supreme Court interpreted that second prong to prohibit "efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations." —— U.S. at ——, 109 S.Ct. at 2373, 105 L.Ed.2d at 151. Plaintiff has cited one case, *Booth v. Terminix International, Inc.,* 722 F.Supp. 675 (D.Kan.1989), which has held that a discriminatory discharge is redressable under section 1981 as part of contract enforcement. *See also Birdwhistle v. Kansas Power and Light*

*Co.*, 723 F.Supp. 570 (D.Kan.1989). We disagree with these cases. Discharge may be a breach of contract but it does not interfere with or obstruct an employee's access to, or use of, judicial or nonjudicial methods of adjudicating disputes. *See Alexander, supra.* We must also reject plaintiff's reliance on *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) and *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Neither dealt directly with the issues raised in the instant case. *Johnson* was limited only to the issue of whether a timely filed charge of employment discrimination with the Equal Employment Opportunity Commission tolls the statute of limitations for a § 1981 claim under the same facts. *McDonald* held that whites could sue for discrimination under section 1981. Both cases, of course, pre-date *Patterson* and in the aftermath of that decision allegations of racial harassment or discriminatory discharge alone are not actionable under § 1981. *See Hall, supra,* and other cases cited above.

We must now decide whether the remaining averments of the complaint can rescue plaintiff's section 1981 claim. Unlike most of the prior cases, plaintiff is not relying solely upon his discharge to support his claim. He also avers that, because of racial prejudice, he did not receive the unbiased hearing provided for by the CGOH Personnel Policy and its Handbook. Significantly, plaintiff alleges in this regard that "[w]hite employees are disciplined" in accordance with the policy and handbook, that these provide for progressive discipline, and list only a few dischargeable offenses which are far more serious than the charge against plaintiff. (complaint, ¶ 13) (brackets added). Further, no white employee was ever discharged for plaintiff's alleged offense. (*Id.*, ¶ 14). The implication is that, if plaintiff had been white, these procedures would have preserved his employment, regardless of whether it was at will or not.

The defendants contend that these allegations do not avail plaintiff. They argue that the right to enforce contracts protect-

ed by section 1981 is limited to access to legal remedies such as the ability to initiate a lawsuit. Any defect in implementing the CGOH procedures did not impede plaintiff's access to the courts. Plaintiff has not even alleged that he was denied access to the grievance procedure. Further, employee handbooks are not contracts under Pennsylvania law and there is no requirement, in any event, that an employee exhaust the remedies provided in the handbook before suing for breach of an employment contract under Pennsylvania law.

Defendants' position has some support in the *Patterson* opinion and the case law. *See Matthews v. Northern Telecom, Inc.*, 1989 WL 131343 at pps. 3–4 (S.D.N.Y.) (section 1981's protection of the right to enforce contracts is limited to private action causing a legal obstruction to plaintiff's case, noting the court's limitation in *Patterson* to the removal of legal disabilities to sue, be a party, testify or enforce a contract); *Carter v. O'Hare Hotel Investors*, 1989 WL 153338 at p. 6 (N.D.Ill.) (section 1981 merely removes legal disabilities to the enforcement of contracts). Other language in *Patterson*, however, would seem to support plaintiff. The language appears to us to be somewhat contradictory. *See Fowler v. McCrory Corp.*, 727 F.Supp. 228, 231 n. 2 (D.Md.1989). We quote at length from the Court's discussion of the scope of the protection offered by section 1981 to enforce contracts:

> The second of these guarantees, "the same right ... to ... enforce contracts ... as is enjoyed by white citizens," embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race. In this respect, it prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, .... It also covers wholly *private* efforts to impede access to the courts *or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations,* as well as discrimination by private entities, such as labor unions, in

enforcing the terms of a contract. Following this principle and consistent with our holding in *Runyon* that § 1981 applies to private conduct, we have held that certain private entities such as labor unions, which bear explicit responsibilities to process grievances, press claims, and represent members in disputes over the terms of binding obligations that run from the employer to the employee, are subject to liability under § 1981 for racial discrimination in the enforcement of labor contracts. See *Goodman v. Lukens Steel Co.* 482 U.S. 656, 96 L.Ed.2d 572, 107 S.Ct. 2617 (1987). The right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights. As Justice White put it with much force in *Runyon,* one cannot seriously "contend that the grant of the other rights enumerated in § 1981, [that is, other than the right to "make" contracts,] i.e., the rights 'to sue, be parties, give evidence,' and *'enforce* contracts' accomplishes anything other than the removal of *legal* disabilities to sue, be a party, testify or enforce a contract. Indeed, it is impossible to give such language any other meaning." [*Runyon v. McCrary* ], 427 US [160], at 195, n 5, 49 L Ed 2d 415, 96 S Ct 2586 [at] 2606 no 5 (1976) ] (dissenting opinions) (emphasis in original). — U.S. at ——, 109 S.Ct. at 2373, 105 L.Ed.2d at 155 (emphasis added in part).

The Court, on the one hand, seems to be saying that section 1981 broadly reaches private conduct that obstructs nonjudicial methods of adjudicating disputes about contracts, but, on the other hand, that it reaches only conduct which impairs the ability to enforce a contract through legal process, and further only to conduct which imposes a legal disability to sue or enforce a contract. Later in the opinion, the Court also stated that section 1981 would not apply as long as a "plaintiff's access to state court or any other dispute resolution process has not been impaired by either the State or a private actor...." *Id.* at ——, 109 S.Ct. at 2376, 105 L.Ed.2d at 154–55

(cited case omitted). Some courts have accordingly recognized only claims based upon conduct impeding access to the process at issue. *See, e.g. Carter, supra,* 1989 WL 153338 at p. 6 (allegations that defendants knowingly provided incomplete and false information to the Illinois Human Rights Commission not actionable under § 1981 when plaintiff did not allege that defendants impaired her access to the commission or the court).

■ We believe that we should adopt the first interpretation of the *Patterson* opinion—that the protection offered by section 1981 of the right to enforce contracts reaches private conduct that obstructs nonjudicial methods of adjudicating disputes about the force of binding obligations. This interpretation is in line with other language in the opinion which, although specifically referring to the first protection offered by section 1981 for the making of contracts, can be of guidance here. The Court stated that "a lower court should give a fair and natural reading to the statutory phrase 'the same right ... to make ... contracts....' " — U.S. at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. More generally, the Court stated that a lower court "should not strain in an undue manner the language of § 1981." *Id.* at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156.

■ Based upon the foregoing, we conclude that defendants' motion must be denied as to defendant CGOH. Section 1981 protects the right of all persons to enforce contracts in the same way that white citizens can. This section extends to the conduct of private actors. Plaintiff has alleged that he is a black man who formerly had a contractual employment relationship with the defendant CGOH. CGOH gives a white employee an impartial hearing to determine if the employee should be discharged. Plaintiff asserts that on the basis of race, he was terminated without being given this same process, which is provided for by the CGOH personnel policy and employee handbook.

We believe these allegations are actionable under section 1981's protection for the

enforcement of contracts. The CGOH hearing is a nonjudicial method of adjudicating disputes and the Supreme Court has said in *Patterson* that private actors obstructing such a method on racial grounds can be held accountable under section 1981. We think it is irrelevant in this action that employee handbooks describing procedures and hearings and progressive discipline may or may not impose contractual obligations on the employer. *See, e.g., Morosetti v. Louisiana Land And Exploration Co.*, 522 Pa. 492, 564 A.2d 151 (1989) (dictum); *Martin v. Capital Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830 (1986). This is not a pendent state law claim for breach of contract. It is a section 1981 claim for racial bias interfering with the enforcement of plaintiff's employment contract. Plaintiff alleges, and we must accept as true, that CGOH provides a method of enforcing employment contracts for its white employees that was not made available to plaintiff. That the lack of a fair hearing may not be actionable as a matter of state contract law does not require that a section 1981 claim be dismissed as well. The court's opinion in *Patterson* did not require that the method of enforcement be a contractual right; only that the plaintiff is attempting to enforce a contract and that a method available to white employees was not available to him.

We view the defect in process on racial grounds as the crucial element here.[4] As noted, we are unsure from the complaint whether plaintiff was granted no hearing at all or the hearing he received was unfair. If it was only the latter situation, we think that plaintiff can prevail only if the process was defective.[5] In other words, we will not permit plaintiff to relitigate the merits of his discharge by re-evaluating the evidence and other submissions. Plaintiff will only prevail if he can show that he was not afforded the process other employees received.[6]

As already stated, the § 1981 claim will proceed only as to CGOH. Plaintiff alleges that McBrayer was involved only with the discharge and the motion must be granted as to him.

We will issue an appropriate order.

### ORDER

AND NOW, this 21st day of February, 1990, upon consideration of defendants' motion for a partial dismissal, treated as a motion for judgment on the pleadings, it is ordered that:

1. The motion is denied as to defendant, Community General Osteopathic Hospital, and granted as to defendant, Bert McBrayer.

2. Count II of the complaint is hereby dismissed as to Bert McBrayer only.

---

**4.** Violation of the progressive discipline provision by itself, for example, would merely be a breach of contract which would not be actionable in light of *Patterson*.

**5.** Plaintiff elaborated somewhat on this claim in his opposition brief at p. 5 when he asserted that he was denied the right to give evidence and confront and cross-examine his accuser.

This still leaves us with doubt as to the exact nature of the hearing plaintiff was given.

**6.** Plaintiff cannot prevail, for instance, if he only shows he received process which would be defective in some other setting, such as in a lawsuit. He must show he did not receive the process afforded other employees.