**Talmadge W. HAYES, Appellant,**

v.

**COMMUNITY GENERAL OSTEOPATHIC HOSPITAL and Bert McBrayer, Appellees.**

**No. 90–5984.**

United States Court of Appeals, Third Circuit.

Argued May 7, 1991.

Decided Aug. 8, 1991.

Elliot A. Strokoff (argued), Strokoff & Cowden, P.C., Harrisburg, Pa., for appellant.

Vincent Candiello (argued), Audrey F. Miner, Morgan, Lewis & Bockius, Harrisburg, Pa., for appellee.

Before MANSMANN and NYGAARD, Circuit Judges, and RONEY, Senior Circuit Judge.*

---

* Honorable Paul H. Roney, United States Senior Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

The primary issue in this appeal is whether 42 U.S.C. § 1981 provides a cause of action for a racially motivated discharge. The district court held that racially motivated employment termination claims are not actionable under 42 U.S.C. § 1981, 730 F.Supp. 1333, and that Hayes was fired for non-discriminatory reasons. We will affirm.

### I.

### FACTS AND PROCEDURE

Appellant Talmadge W. Hayes was employed by the Community General Osteopathic Hospital in Harrisburg, Pennsylvania for more than nineteen years before being discharged on May 16, 1988. Hayes worked as a Purchasing Manager and was the Hospital's only black management level employee.

In November of 1986, Hayes' supervisor, Bert McBrayer, reprimanded Hayes for smelling of alcohol. A few weeks later McBrayer gave Hayes written notice that again "the odor of alcohol was present about [his] person." The notice warned Hayes that he could be suspended or terminated if he smelled of alcohol again. In January of 1988, McBrayer issued another warning marked "final notice" to Hayes regarding his "problem with alcohol."

On the morning of April 25, 1988, Hayes called his secretary to say he was experiencing car trouble near Philadelphia, would not be able to make it to work, and, therefore, would take the day off as a personal day. Hayes' secretary had Hayes speak to McBrayer. Hayes told McBrayer that his car had been towed and he was awaiting repairs, and agreed to try to make it to work later in the day. Nevertheless, Hayes remained absent.

When Hayes arrived at work the next day, McBrayer immediately questioned him about the car trouble. Hayes reiterated what he said the day before on the phone: his car had been towed and repaired near Philadelphia. McBrayer demanded towing and repair receipts. Hayes then modified his original story, explaining instead that a relative had repaired his car. When Hayes refused to verify this new story, McBrayer gave Hayes one hour to submit his resignation, or else be fired. Hayes resigned.

Later, the Hospital's President allowed Hayes to rescind his resignation in order to grieve his termination through the Hospital's internal grievance procedure. Hayes did not succeed in his grievance hearing, and the Hospital's President converted Hayes' resignation into a formal discharge. At trial, the Hospital President testified that he formally discharged Hayes because he had lied to McBrayer about why he took the day off. A Hospital Vice President testified that Hayes admitted that he had lied to his supervisor about why he took the day off. The Hospital admits that Hayes' job performance was "reasonable" and "acceptable" until his termination.

Hayes filed a complaint in the district court against McBrayer and the Hospital, alleging his termination was racially motivated in violation of both Title VII, 42 U.S.C. § 2000e *et seq.* (Count I), and 42 U.S.C. § 1981 (Count II). In Count II, Hayes also alleged that he was denied access to the same full and fair internal grievance procedure the Hospital affords white employees who challenge discharge.

Before discovery, the district court granted the Hospital's Fed.R.Civ.P. 12(c), motion to dismiss that portion of Count II of Hayes' complaint which alleged his right to *enter* into a contract had been violated by his racially motivated discharge. The district court held that *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), barred such a claim under 42 U.S.C. § 1981.

Nevertheless, the district court allowed Hayes to proceed on his § 1981 allegation that his right to *enforce* an employment contract had been infringed by a discriminatory denial of access to the Hospital's internal grievance procedure. Following discovery, however, the district court granted partial summary judgment to the

defendants on this remaining § 1981 claim as well.[1]

After trial, the jury returned an advisory verdict in favor of Hayes. The district court entered judgment against Hayes on his Title VII claims, concluding, contrary to the advisory verdict, that Hayes was discharged for a nondiscriminatory reason: lying to his supervisor about why he took a personal day.

## II.

### RACIALLY MOTIVATED DISCHARGE UNDER 42 U.S.C. § 1981

■ Hayes argues that the district court erred by dismissing his claim that his discharge was racially motivated, violating 42 U.S.C. § 1981. Our standard of review of a dismissal under Fed.R.Civ.P. 12(c) is plenary. *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir. 1988). We apply the same test used by the district court in the first instance. *Society Hill Civic Association v. Harris,* 632 F.2d 1045, 1054 (3d Cir.1980). The district court may not grant a motion to dismiss under Rule 12(c) "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law, ... view[ing] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id. (quoting* 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1386, at 690 (1969)).

In *Patterson,* the Supreme Court held that employee claims of racial harassment on the job are not actionable under 42 U.S.C. § 1981.[2] The Court held § 1981 applies only to racial discrimination in the making or enforcement of private contracts and "cannot be construed as a general proscription of racial discrimination in all aspects of contract relations ..." 491 U.S. at 176, 109 S.Ct. at 2372. Section 1981's anti-discrimination protections extend only to conduct involved in contractual formation, not to problems arising after a contract has been entered into, such as discriminatory breach of an employment contract or discriminatory working conditions. *Id.* at 176–77, 109 S.Ct. at 2372–73. The Court held that racial harassment of an employee occurring after formation of an employment contract was actionable as an unlawful employment practice under Title VII of the Civil Rights Act of 1964, but not under § 1981. *Id.* at 179–180, 109 S.Ct. at 2374–75.[3]

*Patterson* did not hold specifically that claims of racially motivated discharge were barred under § 1981. Nevertheless, we find *Patterson's* direction clear, and hold that such discharge is not actionable under § 1981.[4] Like on-the-job harassment, job termination is clearly "postformation conduct" implicating performance of an existing employment contract, but not formation of such a contract. *Patterson,* 491 U.S. at 179, 109 S.Ct. at 2374. Accordingly, we hold that racially motivated discharge is actionable under Title VII, but not under § 1981. Consequently, we will affirm the district court's order granting defendants' Rule 12(c) motion to dismiss Hayes' § 1981 claim that he was fired because of his race.[5]

1. Hayes does not appeal the district court's partial summary judgment against him on his § 1981 allegation that he was denied access to the Hospital's internal grievance procedure.

2. Section 1981 provides, in relevant part, that: [a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... as is enjoyed by white citizens ... 42 U.S.C. § 1981.

3. The *Patterson* Court recognized that some overlap between actionable § 1981 and Title VII claims was inevitable, but emphasized that its holding was informed in part by a reluctance to read the earlier statute, § 1981, broadly so as to result in a circumvention of a detailed scheme enacted in the later statute, Title VII. 491 U.S. at 181.

4. While we have not been called upon to so interpret *Patterson,* we have previously followed the decision by holding that racial harassment on the part of an employer was not actionable under § 1981. *See Matthews v. Freedman,* 882 F.2d 83, 85 (3d Cir.1989).

5. In this respect, we join other courts which already have held that racially motivated discharge is not actionable under § 1981. *See*

## III.

### TITLE VII CLAIMS

Hayes alleges that many of the district court's findings of fact on his Title VII claims were clearly erroneous. He also contends that we should subject the district court's findings of fact to "heightened scrutiny." We conclude that heightened scrutiny is not necessary, that only one of the district court's findings was clearly erroneous, and that it does not rise to the level of reversible error.

### A.

■ Citing to *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), Hayes argues heightened scrutiny of the district court's findings of fact is required in this case because the district court adopted, nearly verbatim, many of defendants' proposed findings. We reject this theory.

*Anderson* held that "even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed *only if clearly erroneous.*" 470 U.S. at 572, 105 S.Ct. at 1511 (emphasis added). "A district court's verbatim adoption of findings proposed by one party is not, of itself, error ... [O]ur review is only to determine whether the findings are supported by the evidence of record. If they are, then their source of origin is of no moment to the resolution of this appeal." *Hassine v. Jeffes*, 846 F.2d 169, 173 n. 1 (3d

Cir.1988). Thus, the district court's adoption of defendants' proposed findings does not warrant the heightened scrutiny Hayes seeks.

Alternatively, Hayes contends heightened scrutiny is required because of the district court's failure to follow, or at least to explain its divergence from, the advisory jury verdict. We reject this proposition too. A trial court has full discretion to accept or reject the findings of an advisory jury. *Marvel v. United States*, 719 F.2d 1507, 1515 n. 12 (10th Cir.1983). If it rejects such findings, on appeal its findings of fact are to be reviewed as if there was no advisory jury recommendation. *Id.* (citing 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2335, at 127 (1971)).

Accordingly, no "heightened scrutiny" of the District Court's findings of fact are required in this case. We therefore limit our review of the District Court's findings to whether they were clearly erroneous. *Robinson v. Lehman*, 771 F.2d 772, 778 n. 14 (3d Cir.1985); Fed.R.Civ.P. 52(a).

### B.

■ We agree with Hayes that the district court erred by finding that Hayes never disputed the trial testimony of the Hospital's Vice President of Human Resources. This Vice President testified that Hayes admitted lying to McBrayer about why he took the day off. The record establishes that Hayes did expressly dispute this testimony. Nevertheless, the district court's erroneous finding is harmless error

*Gersman v. Group Health Ass'n, Inc.* 931 F.2d 1565, 1571 (D.C.Cir.1991); *Trujillo v. Grand Junction Regional Center*, 928 F.2d 973, 976 (10th Cir.1991); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1520 (11th Cir.1991); *Williams v. First Union Nat'l Bank*, 920 F.2d 232, 233–34 (4th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991); *Prather v. Dayton Power and Light Co.*, 918 F.2d 1255, 1256–58 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991); *Patterson v. Intercoast Management of Hartford, Inc.*, 918 F.2d 12, 13–14 (2d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991); *Carter v. South Central Bell*, 912 F.2d 832, 839 (5th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991); *McKnight v. General Motors Corp.*, 908 F.2d 104, 108–110 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991); *Courtney v.*

*Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845, 849 (9th Cir.1990).

Although a panel of the Court of Appeals for the Eighth Circuit held that claims of discriminatory employment discharge remain actionable under § 1981 in the aftermath of the *Patterson* decision, *see Hicks v. Brown Group Inc.*, 902 F.2d 630 (8th Cir.1990), *vacated and remanded,* — U.S. —, 111 S.Ct. 1299, 113 L.Ed.2d 234 (1991), the court effectively overruled the panel's decision in an *en banc* rehearing of another case, *Taggart v. Jefferson County Child Support Enforcement Unit*, 915 F.2d 396 (8th Cir.1990), *aff'd on rehearing*, 935 F.2d 947 (1991). Other than the initial decision of a panel of the Court of Appeals for the Eighth Circuit, we are aware of no Court of Appeals which has held that discriminatory discharge claims remain viable under § 1981 in the wake of *Patterson*.

which does not require us to reverse either the court's ultimate conclusion that Hayes was dismissed for a non-discriminatory reason, namely, because he lied to his superior; or its determination that there was insufficient evidence in the record to support a finding that Hayes was terminated because of his race.

In *Anderson,* 470 U.S. at 573–74, 105 S.Ct. at 1511–12, the Supreme Court articulated the scope of appellate review of a district court's findings in a Title VII discrimination case. "If the district court's account of the evidence is plausible in light of the record reviewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 573–74, 105 S.Ct. at 1511. Further, we must give "due regard ... to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a).

Here, the district court made a distinct, specific finding that the Hospital's Vice President of Human Resources "testified truthfully" that Hayes admitted lying to his supervisor. Given the deference we must here accord the district court's credibility determinations, we conclude its account of the evidence was "plausible" when the record is reviewed in its entirety, notwithstanding the one erroneous finding. *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511. McBrayer's testimony and that of the Vice President provide sufficient evidence to support the district court's ultimate finding that Hayes was discharged for lying to his superior, not for reasons related to his race. Nothing in the record indicates the district court discredited any testimony establishing that Hayes lied or that the court's ultimate result rested substantially on its mistaken finding that Hayes did not dispute the Vice President's testimony.[6]

Based upon our review of the record, we cannot say the district court erred by concluding that there was "insufficient evidence on which to base a factual finding that defendant discriminated against plaintiff because of his race," and that Hayes' "employment ended because he was untruthful to his superior ...". District court Opinion at 4. Substantial evidence in the record supports these conclusions. *See Robinson,* 771 F.2d at 778 n. 14 (district court's legal conclusions will not be reversed on appeal if supported by substantial evidence in the record such that the court's determinations are neither arbitrary nor capricious).[7]

IV.

CONCLUSION

We will affirm the district court's order dismissing Hayes' § 1981 claim and the judgment for defendants on Hayes' Title VII claims.

---

6. The district court did not determine specifically that Hayes established a *prima facie* case of discrimination. Therefore, it is not clear whether the court concluded that Hayes made out a *prima facie* case but then failed to successfully rebut the hospital's legitimate, nondiscriminatory reason (lying) proffered for his termination, or alternatively, that Hayes failed to establish his *prima facie* case as a threshold matter. We

will assume for purposes of this appeal that Hayes established a *prima facie* case.

7. Without enumerating them here, we have also carefully reviewed Hayes' several other allegations of error and find no error requiring reversal.