**ILAN–GAT ENGINEERS, LTD., Plaintiff,**

v.

**SHELTER SYSTEMS CORP., Defendant.**

**Civ. No. 94–814 (CSF).**

United States District Court, D. New Jersey.

Dec. 22, 1994.

Ravin, Sarasohn, Cook, Baumgartner, Fisch & Baime by Bruce Buechler, Roseland, NJ, for plaintiff.

Dilworth, Paxson, Kalish & Kauffman by Bruce W. Kauffman, Thomas E. Groshens, Westmont, NJ, for defendant.

## OPINION

CLARKSON S. FISHER, District Judge.

This case raises questions of a contractual nature, including the construction of a choice-of-forum clause in a contract between a United States firm and an Israeli enterprise. Plaintiff, Ilan–Gat Engineers, LTD., moves this court for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure in connection with its contractual dispute with defendant, Shelter Systems Corp., Inc. For the reasons expressed below, the motion is denied.

By contract executed December 13, 1990 (the agreement), Ilan–Gat Engineers, LTD. (Ilan–Gat), an Israeli housing contractor, agreed to purchase approximately $2 million in prefabricated housing units from Shelter Systems Corp. (Shelter), a New Jersey company that manufactures and sells such units. Shelter shipped the housing units in early 1991, after which Ilan–Gat assembled them pursuant to a contract with the Israeli Ministry of Housing, such contract known as Tender 315. Shelter alleges that in default of its express obligation under the agreement, Ilan–Gat was six months late in paying for these housing units. By letter dated May 3, 1991, Patrick F. Carr, chief financial officer for Shelter, acknowledged payment in full in connection with Tender 315, but did not disclose when it had received payment. Ilan–Gat maintains that its letter of credit for payment in full was timely received by Shelter.

Apparently, the parties contemplated that Shelter would supply Ilan–Gat with additional housing units in connection with future tenders by the government of Israel. Accordingly, the agreement stipulated that Ilan–Gat would be Shelter's exclusive agent in Israel for the sale of prefabricated housing units. Paragraph 13 of the agreement, captioned "Exclusivity," states:

Shelter hereby appoints Ilan–Gat as its sole and exclusive representative in the State of Israel for the sale, distribution, erection and assembly of prefabricated houses in the State of Israel similar to the Houses for a period of one year after the date hereof (the "Exclusivity Period"). The parties acknowledge that Ilan–Gat shall receive a payment equal to 6% of the sales price F.O.B. of each house sold during the exclusive period promptly after payment of such sales price to Shelter and such payment has already been taken into

account of the calculation of the PPH and shall be taken into account in the calculation of the PPH with respect to any additional Order.

Notwithstanding the above, in the Exclusive Period, Shelter shall be entitled to sell the House Components to other Israeli builders and [in] such event, Ilan–Gat shall be entitled to a payment equal to 3% of the sales price F.O.B. of each house sold during the Exclusive Period. If Ilan–Gat is in default of any payment owing and due to Shelter pursuant to this Contract, for more than 14 days, this exclusivity clause shall be null and void.

In January 1991, representatives of Shelter met with representatives of Ephraim Fleiner Construction and Investment Co. (Fleiner) to discuss Fleiner's purchase of prefabricated housing from Shelter for use in an upcoming project by the Israeli government designated as Tender 321.

Ilan–Gat received a letter dated February 17, 1991, from a Nelson Joyner (Joyner). The letter was written on letterhead bearing the name "Shelter Systems." The letter states that Ilan–Gat was entitled to a 6% commission for the housing sold to Fleiner.

Shelter, for its part, denies that Joyner had authority to make such a representation. Shelter also claims that even if the letter was binding, any commission was contingent on Ilan–Gat's obtaining all necessary regulatory approvals required by the Israeli government in connection with Tender 321. Shelter maintains that because Ilan–Gat breached this agreement, it is not entitled to the 6% commission even if Joyner had authority to modify the agreement.

In September 1991, Shelter and Fleiner executed a contract for Fleiner's purchase of approximately 200 housing units for a total price of $1,653,000. In December 1991, Ilan–Gat demanded 6% of the total purchase price of Shelter's sale to Fleiner, which demand Shelter refused. Ilan–Gat then sued Shelter in Israel. In light of the forum selection clause contained in the agreement, the Israeli tribunal dismissed the case, and Ilan–Gat refiled its claim in this court.

That forum selection clause provides:

> Any claim brought by Shelter, against Ilan–Gat, shall be tried exclusively in the state of Israel before an Israeli court or arbitrator.
>
> Any claim brought by Ilan–Gat against Shelter shall be tried exclusively in the United States, before a U.S. court or arbitrator.

Ilan–Gat argues that the facts which Shelter has admitted justify the entry of judgment in its favor in the amount of $99,180, based on its entitlement to the 6% commission for the Fleiner sale. In the alternative, Ilan–Gat asserts that it is entitled under the agreement to at least a 3% commission of $49,590, as the houses were sold to Fleiner, not affiliated with Ilan–Gat. In addition, Ilan–Gat maintains that the forum selection clause precludes Shelter from asserting any counterclaims or defenses to payment in this court. Shelter alleges a number of defenses to payment. Shelter alleges that Ilan–Gat breached the agreement by failing to make timely payments for houses purchased in connection with Tender 315. Shelter alleges that in violation of the exclusivity clause of the agreement, Ilan–Gat began competing with Shelter in the prefabricated housing business in Israel. Ilan–Gat directs the court to a clause in Paragraph 13, which reads as follows:

> For avoidance of any doubt, Shelter acknowledges that it is aware that Ilan–Gat is the exclusive agent of Timber Tuss Housing Systems.

Ilan–Gat maintains that the above-quoted language illustrates that Shelter acknowledged and agreed all along that Ilan–Gat could serve as Shelter's exclusive agent and as the exclusive agent of one of Shelter's competitors. Shelter maintains that Ilan–Gat is precluded from receiving any commission payments under the agreement for its alleged failure to provide all necessary regulatory approvals for the homes sold pursuant to the Fleiner sale. Shelter asserts that Ilan–Gat's failure to represent Shelter's interests in connection with Tender 321 constituted a breach the agreement, defeating any right to commission payments that Ilan–Gat may otherwise have had in connection with Shelter's sale to Fleiner. In its answer,

Shelter contends that the alleged breaches on the part of Ilan–Gat entitle it to a judgment of $465,000 plus interests and costs.

■ Judgment on the pleadings pursuant to Rule 12(c) is not warranted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law, ... view[ing] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Hayes v. Community General Osteopathic Hospital*, 940 F.2d 54, 56 (3d Cir.1991) (quoting *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir.1980)).

■ As set forth *supra*, under the forum selection clause in the agreement, any claim by Shelter against Ilan–Gat must be tried exclusively in Israel. Ilan–Gat contends that the forum selection clause is both fair and reasonable and must be construed as disallowing Shelter from asserting its defenses and counterclaims in this court. The court disagrees and will allow Shelter to present its defenses and counterclaims in this court.

Ilan–Gat argues that Shelter's allegations are not affirmative defenses but, rather, counterclaims and, as such, are barred by the terms of the forum selection clause. The court believes that regardless of whether Shelter's allegations are characterized as counterclaims, either mandatory or permissive, or affirmative defenses, enforcement of the forum selection clause in this context would be unfair, unreasonable, and an unnecessary waste of judicial resources. In the Third Circuit,

> [a] forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation so seriously inconvenient as to be unreasonable.

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir.), *cert.*

*denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983). Plaintiff would have defendant assert its allegations in an Israeli court, while plaintiff maintains its action in this court. Essentially, Ilan–Gat asks this court to bifurcate the parties' claims and defenses between two judicial systems, let alone courtrooms, literally a world apart. The court believes that doing so would be so inconvenient as to be patently unreasonable on the facts of this case, where the resolution of plaintiff's claims depends largely on the validity of the allegations asserted by defendant. Whether Ilan–Gat is entitled to receive the commission payment it seeks depends on the resolution by this court of Shelter's allegations as set forth in its answer.

Given that the court finds that Shelter shall be permitted to assert its allegations in this court, it is clear that Ilan–Gat's Rule 12(c) motion must be denied. Ilan–Gat requests judgment on the pleadings in the amount of $99,180, or 6% commission on the Fleiner sale. Shelter admits that the Fleiner sale took place, and that its was paid for such sale. Paragraph 13 of the agreement states that "Ilan–Gat shall receive a payment equal to 6% of the sales price F.O.B. of each house sold during the Exclusive Period promptly after payment of such sales price to Shelter." Thus, Ilan–Gat contends, because Shelter has admitted to the two conditions which entitle it to a 6% commission under the agreement, judgment on the pleadings is appropriate. Further, Ilan–Gat argues that the Joyner letter is binding on Shelter, as Shelter's silence in the face of such letter manifests an adoption of the letter. Shelter has defended on the basis of those affirmative defenses detailed above.

■ Shelter's agency argument alone is enough to defeat this Rule 12(c) motion. It is beyond dispute that "[u]nless otherwise agreed, an agent is subject to a duty not to compete with the principal concerning the subject matter of the agency." *United Board & Carton Corp. v. Britting*, 63 N.J.Super. 517, 524, 164 A.2d 824 (1959) (quoting Restatement of Agency § 393). Under paragraph 13, Shelter clearly acknowledged that Ilan–Gat was the exclusive agent for one of

its competitors. However, Shelter maintains that Ilan–Gat itself not only sold but also manufactured prefabricated houses in Israel, in violation of the agency agreement. Whether the parties agreed that Ilan–Gat could compete with Shelter in the manufacture of prefabricated housing in Israel, whether Ilan–Gat did, in fact, manufacture such houses and whether such manufacturing would constitute a breach of the agency relationship are questions which cannot be resolved with the information presently before the court. Shelter also contends that Joyner had no authority to modify the agreement. Again, the court is not in a position to determine at this stage the extent of Joyner's authority and whether any of Shelter's actions with respect to the Joyner letter amount to an adoption of the content of the letter. The court believes that discovery is necessary in order to determine the validity of the defenses asserted by Shelter.

As to Ilan–Gat's alternative prayer for a 3% commission on the Fleiner sale, judgment on the pleadings is also unwarranted. Under the agreement, where houses are sold during the exclusive period to Israeli builders other than Ilan–Gat, "Ilan–Gat shall be entitled to a payment equal to 3% of the sales price F.O.B. of each house sold during the exclusive period." The exclusivity clause of the agreement states that "[i]f Ilan–Gat is in default pursuant to this contract, for more than 14 days, this exclusivity clause shall be null and void." If, as Shelter alleges, Ilan–Gat was in default by its alleged failure to make timely payments on houses purchased in connection with Tender 315, then the exclusivity clause is null and void under the agreement. Plaintiff has submitted the certification of its Israeli counsel, in which it claims Shelter never disputed that payment was made in full and on time. However, the Patrick Carr letter, which acknowledged payment in full in connection with Tender 315, is dated May 3, 1991, approximately six months after payment was due. The court is not in a position, based on the papers that have been submitted, to determine whether such payment in full was timely made.

The court is satisfied that the defenses asserted by Shelter warrant the denial to plaintiff of judgment on the pleadings. Accordingly, plaintiff's motion for judgment on the pleadings is denied. An order accompanies this opinion.

### ORDER

AND NOW, this 22nd day of Dec., 1994, upon consideration of the Motion of plaintiff Ilan–Gat Engineers, Ltd. for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and the response of defendant Shelter Systems Corp. thereto, it is hereby ORDERED that plaintiff's Motion is DENIED.