NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1447
_____

H.J. HEINZ COMPANY,
Appellant

v.

STARR SURPLUS LINES INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-15-cv-00631)
District Judge: Honorable Arthur J. Schwab
_____

Argued December 6, 2016
Before:  FISHER, KRAUSE and MELLOY,[*] *Circuit Judges*.

(Filed: January 11, 2017)

Kevin P. Allen, Esq.
Eckert Seamans Cherin & Mellott
600 Grant Street
44th Floor, US Steel Tower
Pittsburgh, PA 15219

James R. Murray, Esq.  **[ARGUED]**
Blank Rome
1825 Eye Street, N.W.
Washington, DC 20006

_____

[*] Honorable Michael J. Melloy, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Jared Zola, Esq.
Blank Rome
405 Lexington Avenue
New York, NY 10174
        *Counsel for Appellant*

Matthew B. Arnould, Esq.
Robert S. Frank, Jr., Esq.  **[ARGUED]**
John A. Nadas, Esq.
Choate Hall & Stewart
Two International Place
Boston, MA 02110

Robert J. Marino, Esq.
J. David Ziegler, Esq.
Dickie McCamey & Chilcote
Two PPG Place, Suite 400
Pittsburgh, PA 15222
        *Counsel for Appellee*

_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

H.J. Heinz Company appeals the District Court's order rescinding a product contamination insurance policy it purchased from Starr Surplus Lines Insurance Company.  We will affirm.

I.

Heinz makes and sells food products worldwide.  Starr is a global insurance company that sells contaminated product insurance that protects food product companies

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

against losses arising from accidental contamination or government-imposed recall of their products. Prior to 2013, Heinz purchased such insurance from insurers other than Starr. Heinz's coverage was subject to a $20 million self-insured retention, commonly referred to as a "SIR." Similar to a deductible, a SIR is the amount of a loss the insured must bear before insurance coverage begins to respond.

Beginning in May 2014, Heinz sought proposals for contaminated product insurance, including accidental contamination insurance, for the period covering July 1, 2014 to July 1, 2015. Heinz's new global insurance director, Ian Ascher, was responsible for preparing and certifying the accuracy of Heinz's insurance application (the "Application"). An insurance broker, Aon, acted for Heinz throughout the application process and subsequent purchase of the policy (the "Policy").

On June 6, 2014, Aon emailed Heinz's application for an accidental contamination insurance policy to Starr. The Application included Heinz's loss history and a certification signed by Heinz's Ascher. Question 6e of the Application asked:

> Has the Applicant, its premises, products or processes been the subject of recommendations or complaints made by any regulatory body, internal or third party audit over the past 12 months or have any fines or penalties been assessed against the Applicant by any food or similar regulatory body over the last 3 years?

J.A. 2081. Heinz responded "NO" without further explanation or qualification. Question 11a asked:

> In the last 10 years has the Applicant experienced a withdrawal, recall or stock recovery of any products or has the Applicant been responsible for the costs incurred by a third party in recalling or withdrawing any products, whether or not insured or insurable under an accidental and malicious contamination policy?

3

J.A. 2083. Heinz did not fill in either the "YES" or "NO" box, but instead attached a spreadsheet detailing the company's loss history from 1998 to 2013. The loss history disclosed only one loss over ten years greater than Heinz's requested $5 million SIR. J.A. 2085. In addition to the Application, Aon provided Starr with a loss ratio analysis dated June 5, 2014. Like Heinz's attached loss history, the loss ratio analysis projected only one loss in excess of a $5 million SIR over a ten-year period. J.A. 2086. Two Starr underwriters conducted independent analyses of the materials Aon submitted. They concluded that Heinz's requested $5 million SIR was appropriate. Heinz accepted Starr's proposal on June 27, and the Policy became effective on July 1.

Two weeks later, Chinese authorities informed Heinz that baby food it manufactured in China was contaminated with lead (the "2014 China Lead Loss"). Heinz recalled the product. On August 5, Heinz notified Starr of the loss and sought coverage under the new Policy. Starr hired two outside firms to investigate Heinz's claimed loss. During the investigation, the Starr employee responsible for the 2014 China Lead Loss claim found out that, prior to Policy inception, Heinz incurred a loss in excess of $10 million after discovery of excessive levels of nitrite in baby food manufactured in China (the "2014 China Nitrite Loss"). J.A. 2453-55. Heinz did not disclose this loss in its Application. When Starr informed Heinz that it was reserving its right to limit or withhold coverage under the Policy, Heinz responded with this lawsuit.

4

Heinz filed its complaint in the District Court on May 14, 2015, seeking damages for breach of contract and bad faith and a declaration that Starr must indemnify Heinz for the 2014 China Lead Loss claim. In its answer, Starr asserted a counterclaim for rescission based on allegations that Heinz omitted and misrepresented material information in its Application.

The parties agreed to litigate Starr's counterclaim first. On July 31, 2015, the District Court issued a memorandum order concluding that New York law applied. J.A. 32-38. In December 2015, the District Court held a three-day trial before a seven-person advisory jury. The jury found that Starr proved that Heinz made material misrepresentations of fact in its insurance application, but that Starr waived its right to assert rescission. On February 1, 2016, the District Court issued an opinion agreeing with the jury on misrepresentation, but disagreeing on waiver. J.A. 1-27. The District Court declared the Policy void *ab initio* and entered judgment for Starr. J.A. 26-27, 28. Heinz timely appealed.

## II.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. The District Court's determination of the law applicable to the Policy and its interpretation of the Policy's provisions are legal issues over which we exercise plenary review. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007). We also exercise plenary review over the District Court's legal conclusions, *In re Frescati Shipping Co.*, 718 F.3d 184, 196 (3d Cir. 2013), including

5

challenges to the legal standard expressed in jury instructions, *United States v. Korey*, 472 F.3d 89, 93 (3d Cir. 2007). The District Court's findings of fact are reviewed for clear error and deferred to in the ordinary case, "particularly when they are predicated on credibility determinations." *United States v. Marcavage*, 609 F.3d 264, 281 (3d Cir. 2010). A finding of fact is clearly erroneous if it is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *VICI Racing LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 283 (3d Cir. 2014) (internal quotation marks omitted). Where, as here, the District Court rejected an advisory jury's verdict, "on appeal its findings of fact are to be reviewed as if there was no advisory jury recommendation." *Hayes v. Cmty. Gen. Osteopathic Hosp.*, 940 F.2d 54, 57 (3d Cir. 1991).

## III.

Heinz raises three primary arguments on appeal. First, Heinz contends the District Court erred in concluding that New York law, rather than Pennsylvania law, governs Starr's rescission counterclaim. As a corollary to that point, Heinz argues that Starr's invocation of the Policy's choice-of-law provision amounted to ratification of the Policy. Second, Heinz asserts that the District Court misapplied New York rescission law by holding Starr to the incorrect burden of proof and relieving Starr of its obligation to prove every element of its prima facie case. Finally, Heinz submits that Starr waived its right to assert rescission.

## A.

6

This case was adjudicated in the District Court for the Western District of Pennsylvania. Since the court was sitting in diversity, it was bound to follow Pennsylvania's choice-of-law principles to determine the applicable substantive law. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Heinz argues that the District Court erred in applying New York law to Starr's counterclaim.

The dispute over the applicable substantive law comes down to which provision of the Policy governs the choice-of-law inquiry—the Policy's choice-of-law provision or its amendatory service-of-suit endorsement. The Policy's choice-of-law provision reads:

> The construction, validity and performance of this Policy will be governed by the laws of the State of New York. The Insurer and the Insured hereby expressly agree that all claims and disputes will be litigated in the Supreme Court of the State of New York in and for the County of New York or in the U.S. District Court for the Southern District of New York.

J.A. 2179 (boldface omitted). The service-of-suit endorsement "modifies the insurance coverage form(s)" and provides, in relevant part:

> It is agreed that in the event of [Starr's] failure to pay the amount claimed to be due hereunder, [Starr], at the request of the Insured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and *all matters arising hereunder shall be determined in accordance with the law and practice of such Court*.

J.A. 2192 (emphasis added). The District Court concluded that the service-of-suit endorsement does not supersede the Policy's choice-of-law provision. J.A. 35.

Heinz asserts that our decision in *Century Indemnity Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513 (3d Cir. 2009), undermines the District Court's choice-of-law

7

holding. *Century Indemnity* involved a dispute about a retrocessional insurance agreement (a form of reinsurance of reinsurance) that included a service-of-suit clause which we characterized as a "choice-of-law provision." *Id.* at 533. While the service-of-suit clause at issue contained a choice-of-law provision, there was no other choice-of-law provision in the retrocessional agreement. The Heinz-Starr Policy, by contrast, contains an unambiguous choice-of-law provision and a separate service-of-suit endorsement. *Century Indemnity* does not control.

Aside from *Century Indemnity*, Heinz has little law on its side. The vast majority of cases interpreting the phrase "law and practice of such Court" in a service-of-suit clause read it "as a consent to jurisdiction by the insurer and a prohibition against an insurer interfering with a forum initially chosen by the insured." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1292 (N.J. 2008); *see James River Ins. Co. v. Fortress Sys., LLC*, No. 11-60558-CIV, 2012 WL 760773, at *4 n.2 (S.D. Fla. Mar. 8, 2012) (collecting cases). We therefore agree with the District Court that the Policy's service-of-suit endorsement does not supersede its choice-of-law provision.

Having found that the parties contracted for New York law to apply, the District Court properly employed the two-part test of section 187 of the *Restatement (Second) of Conflict of Laws*, as adopted by Pennsylvania courts, *see Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994), to confirm that the parties' contractual choice should not be displaced, J.A. 35-37. We hold that the District Court was correct that New York law governs Starr's rescission counterclaim.

8

But can Starr claim that the Policy should be rescinded as if it never existed, while at the same time seek to have its choice-of-law provision apply to the dispute?  Heinz says no—by taking both actions at once, Starr ratified the Policy.  We think the plain text of the Policy's choice-of-law provision—which states that the "*validity … of this Policy will be governed*" by New York law, J.A. 2179 (emphasis added)—refutes this argument.  We accordingly decline Heinz's invitation to render the Policy's choice-of-law provision a nullity.

B.

New York law entitles an insurer to rescind an insurance policy—thereby deeming the policy void *ab initio*—"if it was issued in reliance on material misrepresentations." *Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 139 (2d Cir. 2008); *see Interboro Ins. Co. v. Fatmir*, 933 N.Y.S.2d 343, 345 (App. Div. 2011).  A misrepresentation in an insurance application is a false statement "as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof."  N.Y. Ins. Law § 3105(a).

Heinz contends that the District Court held Starr to the incorrect burden of proof and relieved Starr of its obligation to prove every element of its prima facie case.  We need not decide whether, under New York law, rescission must be proved by a preponderance of the evidence (as the District Court held), rather than the more demanding clear and convincing evidence standard.  For in our view the District Court

was correct to hold, in the alternative, that Starr's evidence met the clear and convincing evidence standard. J.A. 10 n.14.

The District Court found that Heinz intentionally made four material misrepresentations of fact about its loss history in its answers to Questions 6e and 11a of the Application. J.A. 9 n.12, 10 n.14, 19-20. "Failure to disclose is as much a misrepresentation as a false affirmative statement." *Vander Veer v. Cont'l Cas. Co.*, 312 N.E.2d 156, 157 (N.Y. 1974) (per curiam). A misrepresentation is material "if the insurer would not have issued the policy had it known the facts misrepresented." *Meah v. A. Aleem Constr., Inc.*, 963 N.Y.S.2d 714, 717 (App. Div. 2013) (internal quotation marks omitted); *see* N.Y. Ins. Law § 3105(b)(1). The issue whether a misrepresentation is sufficiently material to void a policy is generally a question of fact. *See Lenhard v. Genesee Patrons Co-op. Ins. Co.*, 818 N.Y.S.2d 644, 646 (App. Div. 2006). But to "establish materiality as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, that show that it would not have issued the same policy if the correct information had been disclosed in the application." *Meah*, 963 N.Y.S.2d at 717 (internal quotation marks omitted). Starr did just that, and the District Court credited all this evidence in concluding that Starr would not have offered Heinz the Policy at a $5 million SIR if it knew about the misrepresentations. J.A. 5, 21, 22. We discern no error in the District Court's findings regarding misrepresentation and materiality.

Heinz argues that the District Court erred in relying on testimony of Starr

10

underwriters that, in Heinz's view, was conclusory and self-serving. But the testimony of Starr's underwriters was far from conclusory; it was supported by Starr's internal documentation. *See Schirmer v. Penkert*, 840 N.Y.S.2d 796, 799 (App. Div. 2007) ("Conclusory statements by insurance company employees, *unsupported by documentary evidence*, are insufficient to establish materiality as a matter of law." (emphasis added)). And in any event, the materiality of Heinz's misrepresentation is self-evident. For the ten-year period identified in the Application, Heinz disclosed only one loss in excess of a $5 million SIR. In reality, however, Heinz experienced three losses exceeding a $5 million SIR, totaling more than $20 million, a figure far exceeding the single $5.8 million disclosed loss. Heinz's misrepresentations were of such magnitude that they deprived Starr of "its freedom of choice in determining whether to accept or reject the risk upon full disclosure of all the facts which might reasonably affect that choice." *L. Smirlock Realty Corp. v. Title Guarantee Co.*, 421 N.Y.S.2d 232, 236 (App. Div. 1979), *aff'd as modified*, 418 N.E.2d 650 (N.Y. 1981). It is "obvious," *id.* at 237, that Starr, or any other similarly situated insurer, would not have issued the Policy with a $5 million SIR.

The District Court then held that "Starr properly relied upon the representations of Heinz in the application process coupled with the Certification." J.A. 20. Heinz says that the District Court relieved Starr of its burden of proving reliance. We agree. It is well-established that rescission of an insurance policy requires proof that the policy "was issued in *reliance* on material misrepresentations." *Jasam Realty*, 540 F.3d at 139 (emphasis added); *see* N.Y. Ins. Law § 3105(a) (requiring "inducement"). The District

11

Court erred in not holding Starr to its burden of proving reliance. We conclude, however, that the District Court's error was harmless and does not require reversal. "An error will be deemed harmless only if it is highly probable that the error did not affect the outcome of the case … ." *Avaya Inc. v. Telecom Labs, Inc.*, 838 F.3d 354, 396 (3d Cir. 2016) (internal quotation marks omitted). Though the District Court did not cite directly to the record, there is overwhelming evidence that Starr relied on Heinz's misrepresentations in the Application and the attached loss history in offering the Policy with a $5 million SIR. Starr underwriters testified that they looked to Heinz's loss history in calculating the appropriate risk and conducting their loss ratio analysis. And the Policy's certification, signed by Ascher, stated that he would inform Starr of any material changes to Heinz's risk. Ascher knew about the 2014 China Nitrite Loss during June, but did not inform Starr. *See* J.A. 2248 (loss history figures in Ascher's June 2014 presentation to Heinz senior management). We think it highly probable that, had the District Court properly held Starr to its burden of proving reliance, the outcome would be the same. In sum, we find no reversible error in the District Court's conclusion that Starr proved by clear and convincing evidence that Heinz made material misrepresentations in its Application upon which Starr reasonably relied.

## C.

The District Court rejected the advisory jury's recommendation that Heinz proved by a preponderance of the evidence that Starr waived its right to assert rescission. Under New York law, waiver is "the voluntary and intentional relinquishment of a known

12

right"; proof of waiver "requires evidence of a clear manifestation of intent, and cannot be lightly inferred." *Chi. Ins. Co. v. Kreitzer & Vogelman*, 265 F. Supp. 2d 335, 343 (S.D.N.Y. 2003) (citations and internal quotation marks omitted). The issue whether an insurer waives its right to rescind a policy is a question of fact. *See Amrep Corp. v. Am. Home Assurance Corp.*, 440 N.Y.S.2d 244, 247 (App. Div. 1981). Heinz suggests that the District Court misapplied New York law and misconstrued the relevant evidence. But in our view, the District Court predicated its waiver analysis on a proper understanding of New York law, and its findings of fact are otherwise free from clear error.

Heinz raises two independent grounds of waiver. First, Heinz says Starr agreed to sell the Policy despite sufficient knowledge of Heinz's misrepresentations. An insurer has sufficient knowledge of a misrepresentation if it has been provided with information "sufficiently indicative of something more to be tantamount to notice of the unrevealed." *Friedman v. Prudential Life Ins. Co. of Am.*, 589 F. Supp. 1017, 1024 (S.D.N.Y. 1984). In particular, Heinz points to emails indicating that one of Starr's underwriters read a March 2014 internet article reporting on Heinz's Canada loss, as well as information regarding a 2008 loss that Heinz claims it disclosed in a prior application for a different kind of insurance policy. The District Court concluded, "based upon the credibility of the witnesses," that "[t]hese items, without more, would not trigger a reasonably prudent insurer to follow-up further." J.A. 12. We cannot say that the District Court's factual finding is "completely devoid of minimum evidentiary support displaying some hue of credibility." *VICI Racing*, 763 F.3d at 283 (internal quotation marks omitted). And we

13

find unconvincing Heinz's contention that Starr committed waiver as a matter of law. Seeing no error, legal or factual, we reject Heinz's first waiver argument.

We are likewise not persuaded by Heinz's submission that Starr failed to promptly assert rescission after a reasonable period of investigation. "New York law requires a party seeking rescission of a contract to act without unreasonable delay upon learning the grounds for rescission." *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 6 F. Supp. 3d 380, 393 (S.D.N.Y. 2014). But an insurer need not "make a rushed and uninformed decision; it is entitled to a reasonable period of time in which to investigate the potential basis for rescission. Only if the insurer delayed *unreasonably* in seeking rescission will it be found to have forfeited its right to do so." *Id.* (citations omitted).

Heinz argues that it disclosed the 2014 China Nitrite Loss to Starr's third-party investigators by January 2015, several months before this lawsuit began. Even though no Starr employee knew about the investigators' findings until late-April 2015, Heinz attempts to impute the knowledge of Starr's investigators to Starr itself. The District Court rejected this argument, holding that the investigators were agents hired for a "limited purpose which did not include underwriting and investigating grounds for rescission." J.A. 26 n.23. This Court need not reach the agency question, for even assuming the investigators' knowledge can be attributed to Starr, the delay is this case was entirely reasonable. Starr's investigation was still ongoing when Heinz filed this suit in May 2015, and Starr claimed rescission the following month. Courts applying New York rescission law have found investigation periods from six to twelve months to be

14

reasonable. *See Marshall Granger*, 6 F. Supp. 3d at 395 (collecting cases). We are of the view that the five-month period between January 2015 and the filing of Starr's rescission counterclaim on June 16, 2015, was wholly unobjectionable.

Heinz does not convince us that the District Court erred in concluding that Starr agreed to sell the Policy despite sufficient knowledge of Heinz's misrepresentations. Nor do we take issue with District Court's conclusion that Starr promptly sought rescission following a reasonable period of investigation after gaining sufficient knowledge of the misrepresentations. We therefore agree with the District Court that Heinz failed to prove that Starr waived its right to assert rescission.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.