■ RICHARD ADLER et al., Respondents, v IRA HELMAN et al., Defendants, and LAWYERS TITLE INSURANCE CORPORATION, Appellant.—Casey, J. P. Appeal (transferred to this court by order of the Appellate Division, Second Department) from that part of an order of the Supreme Court (Dickinson, J.), entered October 23, 1989 in Putnam County, which denied defendant Lawyers Title Insurance Corporation's motion to dismiss the first and second causes of action in the complaint.

At issue on this appeal is whether defendant Lawyers Title Insurance Corporation (hereinafter Lawyers) can be held liable for its agent's fraudulent misrepresentation concerning the existence of a restrictive covenant on a parcel of real property owned by an officer and shareholder of the corporate agent, where the misrepresentation was to induce plaintiff Richard Adler (hereinafter plaintiff) to purchase the real property. We conclude that in the circumstances of this case, as established by the allegations of the complaint, Lawyers is not liable for its agent's fraud and, therefore, its motion to dismiss the two causes of action against it based upon fraud should be granted.

In May 1979, plaintiff entered into a contract with defendant Ira Helman to purchase a 9.3-acre parcel of property located near the Bog Brook Reservoir in Putnam County. A title report, prepared at the request of plaintiff's attorney, revealed the existence of a restrictive covenant in favor of the City of New York which prohibited the construction of any structures or septic systems on a two-acre portion of the parcel. Plaintiff gave Helman time to have the restriction removed, but in October 1979 Helman returned plaintiff's downpayment and the contract was canceled.

In November 1979, defendant Southeastern Abstract Corporation (hereinafter Southeastern) was formed and became an authorized agent for Lawyers. Southeastern was created by the principals of defendant Eastern Abstract Corporation (hereinafter Eastern), also an agent for Lawyers, for the purpose of insulating Eastern from the fraud that was about to be committed. Helman was an officer and shareholder of both Eastern and Southeastern. Defendant Margaret Miller,

the daughter of the real estate agent employed by Helman to sell the property, was a vice-president of Southeastern.

Shortly after Southeastern was formed, plaintiff was advised that Helman could get the restrictive covenant "removed through contacts in New York City". Based upon this representation, plaintiff again entered into a contract for the purchase of the property, contingent upon removal of the restriction. A title report was issued by Southeastern, under the signature of Miller, with the restrictive covenant listed as an exception to title. Helman, Miller and the real estate agent informed plaintiff that the restrictive covenant had been removed, when in fact it had not, and at the closing the exception was marked "omitted" on the title report by Miller. Based upon the title report, the transaction was completed and Lawyers issued a fee policy of title insurance to plaintiff, as the insured.

For tax and liability purposes, the property was subsequently conveyed to plaintiff's wife and then to a corporation formed by plaintiff to develop the property. When the City of New York learned that the property was being developed, including the construction of condominiums and a septic system on the two-acre parcel covered by the restrictive covenant, an action was commenced to enjoin any activity in violation of the restriction. That action was ultimately settled but at significant cost to plaintiff and his corporation. This action for damages against the various parties allegedly involved in the fraud ensued.

A principal is liable for the fraudulent acts of his agent committed within the scope of his authority, and if the agent acted outside the scope of his authority, the principal is nevertheless liable if he later ratifies the fraudulent acts and retains the benefits derived from them (see, Chase Manhattan Bank v Perla, 65 AD2d 207, 211). "When an agent abandons the object of his agency and acts for himself, by committing a fraud for his own exclusive benefit, he ceases to act within the scope of his employment and, to that extent, ceases to act as agent" (Credit Alliance Corp. v Sheridan Theatre Co., 241 NY 216, 220; see, Henry v Allen, 151 NY 1). This case clearly falls within the latter rule. According to the allegations in the complaint, the agent was actually a creation of the fraud, formed for the purpose of protecting the legitimate agent, Eastern, from the consequences of the fraudulent scheme. Although the agent appeared to act within the scope of its authority in the preparation of the title report, the agent's sole purpose was to induce plaintiff to purchase real property

owned by one of the agent's officers and shareholders, and the fraud also induced the principal, Lawyers, to issue a fee title insurance policy to plaintiff without an exception for the restrictive covenant. There is no allegation that Lawyers did anything to mislead plaintiff into believing that the restrictive covenant had been removed or that Lawyers ratified Southeastern's fraudulent acts and retained any benefit derived from the fraud. Irrespective of whatever liability Lawyers may have on the insurance policy (which is not an issue on this appeal), we conclude that Lawyers is not liable to plaintiff for Southeastern's fraud.

Order modified, on the law, with costs to defendant Lawyers Title Insurance Corporation, by reversing so much thereof as partially denied said defendant's motion; motion granted in its entirety and complaint dismissed against said defendant; and, as so modified, affirmed. Casey, J. P., Mikoll, Yesawich, Jr., Levine and Harvey, JJ., concur.