06-4738-cv
Fid. & Guaranty v. Jasam Realty Corp.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: February 27, 2008          Decided: August 26, 2008)

Docket Nos. 06-4738-cv, 06-4741-cv

--------------------------------------

FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC.,

Plaintiff-Appellee,

- v. -

JASAM REALTY CORP. and CROTONA PROPERTIES, INC.,

Defendants-Cross-Claimants-Appellants,

SURRE, GOLDBERG & HENRY ASSOCIATES, INC.,

Defendant-Cross-Defendant-Appellant,

JOSE RODRIGUEZ and ALICE RODRIGUEZ,

Defendants-Appellants.

--------------------------------------

Before:   CABRANES, POOLER, and SACK, Circuit Judges.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Leonard D. Wexler, Judge), following a jury trial, declaring, inter alia: 1) that plaintiff insurer has no duty to defend or indemnify the defendant insureds in a personal injury lawsuit, because the jury found that the insureds had made material misrepresentations or fraudulently concealed facts in connection with their requests

for insurance coverage; and 2) that defendant broker was not liable to the insureds for failing to procure the insurance in question. The district court also awarded costs to plaintiff insurer. Because the district court's special verdict form permitted the jury to consider incorrect dates on which the veracity of the alleged misrepresentations could be judged and the court did not correct the error when invited by the jury to clarify the matter, the judgment is:

Vacated and remanded.

NORMAN KAPLAN, Great Neck, NY, for Defendants-Cross-Claimants-Appellants.

HOWARD COHEN, Saretsky Katz Dranoff & Glass LLP (Patrick J. Dellay, of counsel), New York, NY, for Defendant-Cross-Defendant-Appellant.

LORIN DONNELLY, Milber Makris Plousadis & Seiden LLP, Woodbury, NY, for Defendants-Appellants.

MEGAN VESELY, DLA Piper US LLP (Robin C. Tarr, Joseph G. Finnerty, Jr., of counsel), New York, NY, for Plaintiff-Appellee.

SACK, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York (Leonard D. Wexler, Judge), following a jury trial, declaring, among other things, that plaintiff-appellee Fidelity and Guaranty Insurance Underwriters, Inc., ("Fidelity") has no duty to defend or indemnify defendants-appellants Jasam Realty Corp. ("Jasam") and Crotona Properties Inc. ("Crotona") in connection with a personal

2

injury lawsuit that had been brought against Jasam and Crotona, and awarding Fidelity its costs arising out of its provision of a legal defense in that lawsuit. Defendant-appellant Surre, Goldberg & Henry Associates, Inc. ("Surre") served as the insurance broker in connection with the issuance of the policy in question. The district court's judgment was based on the jury's finding that both Jasam and Crotona had made material misrepresentations or fraudulently concealed information in connection with their requests for insurance coverage by Fidelity. On appeal, the defendants argue that they are entitled to judgment in their favor as a matter of law and, in the alternative, that the district court erred in formulating its special verdict form and committed various other errors in the course of conducting the trial. We agree with the latter argument, and therefore vacate the judgment and remand.

**BACKGROUND**

"When an appeal comes to us after a jury verdict, we view the facts of the case in the light most favorable to the prevailing party." Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 77 (2d Cir. 2006). We recite the facts underlying this appeal in accordance with that principle.

On July 17, 1997, Fidelity issued a general commercial liability insurance policy to Jasam. The policy was renewed annually until Fidelity cancelled it on April 26, 2001. Jasam had been incorporated some two weeks before the policy issued, on

3

July 2, 1997, for the purpose of purchasing and then operating a shopping center.[1]

On May 25, 1999, Jasam's principal, Jacob Rad, incorporated Crotona as a vehicle for purchasing land in the Bronx. Shortly thereafter, in June or July 1999, Crotona purchased the land. At that time, the land was vacant.

On August 4, 1999, Rad sent a telecopy to Surre, Jasam's insurance broker, requesting that properties owned by Crotona be added to the coverage provided by Jasam's liability policy. Surre then completed a "binder" form on its own letterhead dated August 5, 1999, that referenced the insurance policy Jasam had held with Fidelity since 1997. It purported to add to that policy the Crotona properties as well as the Crotona entity itself as an additional named insured. It listed an effective date of August 5, 1999, but no expiration date. It stated:

> The Company [Fidelity] accepting this risk
> acknowledges itself bound by terms,
> conditions and limitations of the
> policy . . . of the insurance in current use
> by the Company for the kind . . . of
> insurance specifically ordered on this Binder
> from the effective date and hour specified
> therein . . . . Unless previously cancelled
> as hereinafter provided, this Binder shall
> terminate upon acceptance by the insured of a
> policy . . . as ordered herein. This Binder
> may be cancelled at any time by the Insured
> or by the broker or agent who placed the risk

---

[1] Jasam initially procured this policy from Fidelity through KGK Agency Inc., an insurance broker. But in July 1998, Jasam requested that Fidelity recognize Surre rather than KGK as its broker of record with respect to the Fidelity insurance policies that it held.

by notice to the Company . . . . This Binder may be cancelled by the Company by written notice to the Insured and to the agent or broker who placed the risk stating when, not before 12:00 o'clock noon of the fifth business day following the date of mailing, such cancellation shall be effective. A premium charge at the rates and in compliance with the rules . . . in use by the Company when this Binder becomes effective will be made for the time this Binder is in effect if no policy of insurance in place hereof is issued and accepted by the Insured.

Binder, Plaintiff's Trial Exhibit 10, at 1.[2] Fidelity neither disputes nor concedes the authenticity of this document or the date, if any, on which it was delivered to Jasam.

The relationship between Fidelity and Surre was established, in part, by an "Agency Agreement" to which both companies were parties, a version of which was executed on April 27, 1998. Addenda to the agreement were executed at later dates, all of which were prior to the date of the binder at issue in this lawsuit. The Agency Agreement stated, among other things, that Surre had the authority, on behalf of Fidelity and related companies:

1. To accept applications for insurance; to bind the Company on coverages; and to issue, endorse, provide certificates of insurance and cancel contracts of insurance; all subject to the letter of authority and subject to the underwriting rules and requirements of the Company[; and]

2. To pay claims within the specific authority granted by the Company.

---

[2] References to "Exhibit" in this opinion refer to exhibits introduced as evidence during the district court's proceedings held May 30, 2006, through June 1, 2006.

Agency Agreement, Plaintiff's Trial Exhibit 21, at 1. The boundaries of this authority were described in an attached "General Letter of Authority," in which Fidelity granted Surre "[a]uthority to bind coverage . . . on acceptable risks for coverages filed and written by the company subject to [Fidelity's] normal rules, guidelines and underwriting standards," id. at 6, but, with respect to commercial liability insurance of the sort held by Jasam, limited this authority to incurring a maximum risk of $1,000,000. Binders issued by Surre were to conform to certain requirements:

> Binders must refer to the standard applicable coverage form being bound, the term of binder, the limits of liability, the name and address of insured, the property covered and the location of risk. The binder must be received by the company in writing within three (3) working days of the inception date of said coverage. No back dating of coverage is allowed. Binders are not to exceed 30 days in length. If coverage is needed for a longer period of time, the policy should be issued.

Id. at 7.

> The Agency Agreement also imposed a variety of related responsibilities on Surre:

> [Surre] agrees . . . to promptly report all claims and deliver all relevant claims information involving coverages placed with the Company . . . ; to provide reliable underwriting information; and to submit written binders to the Company within three working days of coverage inception.

Id. at 1.

The parties dispute when Surre notified Fidelity of the binder it issued to Jasam for Crotona. Surre asserts that it did so on August 5, 1999, immediately after receiving Jasam's request, and that it did so again on December 14, 1999, and once again on August 22, 2000. Fidelity maintains that it received no notice of the binder nor any request for insurance related to Crotona until the latter date, August 22, 2000.

In late 1999, several months after Crotona purchased the properties in question, and after August 5, 1999, the date of the "binder" form, Jasam began building residences on the Crotona properties. On January 10, 2000, defendant Jose Rodriguez was injured while working on the construction site. On July 5, 2000, Rodriguez filed a lawsuit against Jasam related to this injury. On August 15, 2000, Jasam notified Surre of Rodriguez's action. Eight days later, on August 23, 2000, Surre forwarded Jasam's claim to Fidelity, which Fidelity received.

Fidelity did not itself issue an endorsement[3] for Crotona or the Crotona properties until August 22, 2000, well after Rodriguez was injured. At Surre's request, however, Fidelity back-dated this coverage to August 5, 1999, the same day that Surre stated that it received Jasam's request for insurance for Crotona and the effective date shown on the Surre binder form.

---

[3] An "endorsement" is "[a]n amendment to an insurance policy; a rider." Black's Law Dictionary (8th ed. 2004).

7

Some seven months later, in April 2001, Fidelity sent a "Notice of Cancellation of Insurance," notifying Surre that it was cancelling Jasam's general liability insurance policy based on "MATERIAL MISREPRESENTATION OF EXPOSURES." Cancellation Notice, Plaintiff's Trial Exhibit 38, at 2. Fidelity explained that the policy covered only vacant land and not "construction sites for building new dwellings." Id. at 1. The cancellation was to be effective April 26, 2001.

District Court Proceedings

In December 2001, Fidelity filed a complaint in the district court that, as amended in October 2002, sought: 1) a declaration that it owed "no duty to defend or indemnify [Jasam or Crotona] in the underlying action" brought by Rodriguez; 2) a judgment rescinding Jasam's insurance policy; and 3) an award of damages for the cost of defending Jasam and Crotona in the underlying action. In the alternative, Fidelity sought indemnification from Surre.

The district court conducted a jury trial that concluded on June 2, 2006.[4] The jury answered a special verdict form provided by the court that included the following interrogatories: 1) "Did Jasam make any material misrepresentation in connection with the request for coverage of the Crotona Properties?"; and 2) "Did Jasam engage in fraudulent

_____

[4] This case had previously been tried before a jury in 2003. On appeal, the district court's judgment following that trial was vacated based on ambiguity in the court's special verdict form. Fidelity and Guar. Ins. Underwriters, Inc. v. Rodriguez, 141 F. App'x 11 (2d Cir. 2005) (summary order).

8

concealment in connection with the request for coverage of the Crotona Properties?" Analogous questions were also posed with respect to Crotona.

While the jury was deliberating, it submitted a written query to the district court: "Having problem with 1st question. If we consider 8/5/99 as date to consider misrepresentation or 8/22/2000, answers to questions will possibly differ. Which date should we consider when answering?" The district court responded: "I will not help you much. Consider both dates. Consider August 5, [19]99, consider [August] 22, 2000, consider one date or both. It's up to you."

After completing its deliberations, the jury answered "YES" to both the material misrepresentation and fraudulent concealment questions, and as to both Jasam and Crotona. On the special verdict form, the jury indicated that the following statements were material misrepresentations: 1) "misstatement as to the true nature of Jasam's business"; and 2) "misstatement as to the use of the land to be insured." The jury also determined that the information that had been fraudulently concealed by both Jasam and Crotona included all of the options included in the special verdict form: 1) "failure to advise of the true nature of Jasam's [or Crotona's] business"; 2) "failure to advise that the land to be insured was a construction site"; and 3) "failure to advise Fidelity about the Rodrigue[z] lawsuit."

Separately, the jury indicated on the special verdict form that: 1) "Surre breach[ed] its contract with Fidelity"; 2)

9

"Surre [was not] negligent in its dealings with Jasam with respect to the Crotona properties"; and 3) "Surre [was not] negligent in its dealings with Crotona with respect to the Crotona properties."

Based on the jury's findings, the district court issued a judgment declaring that Fidelity had properly cancelled the insurance policies at issue, that Fidelity had no duty to defend or indemnify Jasam or Crotona with respect to the Rodriguez lawsuit, and that Jasam and Crotona were liable to Fidelity for the stipulated costs it had already expended in the Rodriguez litigation. The court also declared that Surre had no liability to Jasam or Crotona for the resulting absence of insurance coverage.

The defendants appeal.

**DISCUSSION**

I.   Special Verdict Form

The defendants argue that the district court abused its discretion by, among other things, failing to specify in its special verdict form the correct date on which the veracity of Jasam's statements was to be judged. We agree that the district court erred in this regard and that we must therefore vacate the judgment.

> The formulation of special verdict questions
> rests in the discretion of the trial judge,
> and therefore our review is confined to
> inquiring whether the trial court's
> submission of the issues in the form of these
> questions constituted an abuse of discretion.
> We will reverse a judgment entered upon
> answers to questions which mislead and

10

confuse the jury or which inaccurately frame the issues to be resolved by the jury.

Cann v. Ford Motor Co., 658 F.2d 54, 58 (2d Cir. 1981) (citations omitted), cert. denied, 456 U.S. 960 (1982).  In other words, "[a] new trial is warranted if, taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law."  BAII Banking Corp. v. UPG, Inc., 985 F.2d 685, 696 (2d Cir. 1993) (citation and internal quotation marks omitted).  We therefore begin our analysis with the law relevant to Fidelity's claims of misrepresentation and fraudulent concealment.

Under New York law,[5] an insurer may rescind an insurance policy if it was issued in reliance on material misrepresentations.  Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan, 77 F.3d 48, 52 (2d Cir. 1996); Process Plants Corp. v. Beneficial Nat'l Life Ins. Co., 53 A.D.2d 214, 216, 385 N.Y.S.2d 308, 310 (1st Dep't 1976) (per curiam), aff'd on the opinion below, 42 N.Y.2d 928, 366 N.E.2d 1361, 397 N.Y.S.2d 1007 (1977); see also N.Y. Ins. Law § 3105.  A misrepresentation in an application for insurance is defined as a false "statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof."  N.Y. Ins. Law § 3105(a).  A policy may also be rescinded by the insurer "if the insured fraudulently

_____

[5] The parties do not dispute that New York substantive law applies to the legal issues raised by this lawsuit.

11

concealed from or misrepresented a material fact to the insurer at the time the policy was issued." City of Johnstown v. Bankers Standard Ins. Co., 877 F.2d 1146, 1153 (2d Cir. 1989).

The special verdict form identified three facts alleged by Fidelity to be material and to have been misrepresented or fraudulently concealed by Jasam: 1) that the Crotona properties were construction sites; 2) that Jasam was a general contractor; and 3) that Rodriguez had filed a personal injury lawsuit against Jasam and Crotona. There is little question that these conditions or events had all existed or occurred by July 5, 2000, when the last of the three became true: Rodriguez filed his personal injury lawsuit. Representations to the contrary after that date would have been false; failure to disclose those facts could have provided the basis for rescission based on fraudulent concealment. The parties do not agree, however, that any such representations or concealments were made on or after July 5, 2000. And the district court declined to tell the jury, either in its special verdict form interrogatories or after receiving a written query from the jury, what date to consider for these purposes.

To resolve this question, we look to New York Insurance Law § 3105(a), which directs us to examine statements made "by, or by the authority of, the applicant for insurance" and to do so as of the point in time "at or before the making of the insurance contract." Id. Fidelity argues that the date that must be used is August 22, 2000, when, it asserts, it first received notice

12

from Surre of Jasam's request for insurance coverage for Crotona and the Crotona properties, and when it issued in return the endorsement for these additional risks. That is, in Fidelity's view, Surre acted "by authority of" Jasam when it requested insurance coverage on August 22, 2000. The insurance contract was "made" on that date, irrespective of when Jasam may have requested insurance from Surre, and irrespective of what Jasam may have represented to Surre when it made that request.

Fidelity identifies no evidence that Jasam itself made representations of any sort on August 22, 2000. Fidelity relies entirely on statements made by Surre at the time and on (1) "the general rule . . . that an insurance broker is regarded as agent for the insured," Riedman Agency, Inc. v. Meaott Constr. Corp., 90 A.D.2d 963, 964, 456 N.Y.S.2d 553, 555 (4th Dep't 1982), appeal dismissed, 58 N.Y.2d 824, and (2) the well-established principle that an agent's frauds or misrepresentations are imputed to the principal if made within the scope of the agent's authority, see, e.g., Dyke v. Peck, 279 A.D.2d 841, 843, 719 N.Y.S.2d 391, 394 (3d Dep't 2001); Adler v. Helman, 169 A.D.2d 925, 926, 564 N.Y.S.2d 828, 830 (3d Dep't 1991).

In light of the Agency Agreement between Fidelity and Surre, however, Fidelity's reliance on these principles is misplaced. "Although an insurance broker is generally considered to be an agent of the insured, a broker will be held to have acted as the insurer's agent where there is some evidence of 'action on the insurer's part, or facts from which a general

13

authority to represent the insurer may be inferred.'" <u>Rendeiro v. State-Wide Ins. Co.</u>, 8 A.D.3d 253, 253, 777 N.Y.S.2d 323, 324 (2d Dep't 2004) (quoting <u>Bennion v. Allstate Ins. Co.</u>, 284 A.D.2d 924, 925, 727 N.Y.S.2d 222, 224 (4th Dep't 2001) (citations omitted)).  The Agency Agreement explicitly authorized Surre, as Fidelity's agent, to "accept applications for insurance" and "to bind [Fidelity] on coverages."  Agency Agreement, Plaintiff's Trial Exhibit 21, at 1.  And the policy issued by Fidelity provided that "written notice by or on behalf of any claimant to any of our agents in New York State . . . will be the same as notice to [Fidelity]."  Fidelity Insurance Policy, Plaintiff's Trial Exhibit 17, at 35.  These clear delegations of authority amply establish Surre's authority to represent Fidelity in these specific roles.  Aside from the common-law insured-broker relationship, overridden in this respect by contract, Fidelity has not identified any evidence that Surre did not possess this explicitly delegated authority.  <u>See</u> <u>Warnock Capital Corp. v. Hermitage Ins. Co.</u>, 21 A.D.3d 1091, 1094, 803 N.Y.S.2d 606, 609 (2d Dep't 2005) (concluding that insured is entitled to coverage based on broker-issued binder "as a matter of law [in light of] evidence indicating that [insurer] and [broker]'s course of conduct demonstrated that [broker] maintained apparent authority to issue a binder on behalf of [insurer]").  To the extent Surre acted within the scope of this agency agreement, moreover, Surre's knowledge of Jasam's business, properties, and claims must be imputed to Fidelity, even if that knowledge was untimely

14

communicated by Surre to Fidelity.  See, e.g., Seward Park Hous. Corp. v. Cohen, 287 A.D.2d 157, 167, 734 N.Y.S.2d 42, 50-51 (1st Dep't 2001) ("The general rule is that knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it." (quoting Center v. Hampton Affiliates, 66 N.Y.2d 782, 784, 488 N.E.2d 828, 829, 497 N.Y.S.2d 898, 899 (1985) (internal quotation marks omitted)).

Based on the scope of Surre's authority as Fidelity's agent, the only representations relevant in these circumstances are those that were made by Jasam to Surre in connection with the binder for coverage for Crotona and the Crotona properties.  The accuracy of those representations must be evaluated at the time when Surre, acting as Fidelity's agent for purposes of accepting insurance applications and binding Fidelity to coverage, received Jasam's request and thereafter bound Fidelity to the requested coverage.  Surre's knowledge of Jasam's business and claims, at that time, is imputed to Fidelity.  Any error or delay by Surre in communicating this request to Fidelity as its principal is irrelevant to our misrepresentation inquiry, even though it would be relevant to Fidelity's claim that Surre breached the Agency Agreement.[6]

_____

    [6] We also note that with respect to Surre's authority to bind Fidelity to coverages, we would look to Surre's apparent authority and not "any secret limitations upon [its] actual authority which may have been imposed by [the insurer] in this particular instance."  Cees Restaurant, Inc. v. Lobdell, 15

15

Because there is no evidence that Jasam itself made any further representations on August 22, 2000, the jury should not have been permitted to attribute Jasam's earlier representations to that date. The district court's failure to specify the proper date in its special verdict form, and its subsequent instruction to the jury to consider Jasam's representations as of either August 5, 1999, or August 22, 2000, gave a misleading impression and inadequate understanding of the law and was therefore error.

We cannot ourselves determine, from the text of the special verdict form or otherwise, whether the jury concluded that Jasam had misrepresented or fraudulently concealed information on August 22, 2000 -- a finding that would be impermissible as a matter of law -- or on August 5, 1999. This ambiguity requires that we vacate the judgment of the district court in its entirety.[7]

## II. Judgment as a Matter of Law

The defendants also ask us to enter judgment in their favor as a matter of law, notwithstanding the jury's answers to the interrogatories. For the following reasons, we decline to do so.

### A. Sufficiency of the Evidence

---

N.Y.2d 275, 281, 206 N.E.2d 180, 184, 258 N.Y.S.2d 87, 91 (1965).

[7] The defendants raise a number of other arguments related to the jury instructions, the exclusion of certain testimony, and limitations placed on the participation of Rodriguez's counsel at trial. We need not evaluate these arguments to resolve this appeal and express no view as to their merits.

The defendants assert that even if the jury made (or another jury were to make) a finding of material misrepresentation while correctly treating August 5, 1999, as the date as of which to assess Jasam's communications, they would nonetheless be entitled to judgment as a matter of law. A jury verdict may be set aside as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). This requires "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." Song v. Ives Labs., Inc., 957 F.2d 1041, 1046 (2d Cir. 1992) (quoting Mattivi v. S. African Marine Corp., 618 F.2d 163, 168 (2d Cir. 1980)) (internal quotation marks omitted; ellipsis in original).

The defendants are correct that some of the jury's findings could not stand -- Jasam could not, for example, have fraudulently concealed the Rodriguez lawsuit, which together with his injuries did not occur until 2000. But the jury could reasonably conclude that Jasam misrepresented other facts in August 1999.

Fidelity alleges, for example, that Jasam misrepresented its intended use of the Crotona properties to

17

Surre when it requested additional coverage. The defendants counter that there was no evidence that, in August 1999, the Crotona properties were not vacant or that they harbored any intention at the time to perform construction on the site. But construction on the property began, in fact, shortly thereafter. And Jacob Rad, Jasam's principal, concedes that he knew what kind of insurance coverage was required for this construction. There is little indication that he sought the appropriate coverage when the nature of the property changed to a construction site. We therefore think that there remains a question for the jury as to whether Jasam made material misrepresentations of fact (or fraudulently concealed facts) in connection with its request for insurance for Crotona in August 1999, which means that judgment as a matter of law is not appropriate on this ground.

B.   Questions of Law

The defendants argue that even if we were to accept the jury's finding that Jasam and Crotona had made material misrepresentations in August 1999, they are, for various reasons, nonetheless entitled to judgment as a matter of law in light of other undisputed facts.

1.   1997 Application.  Jasam first contends that because it is undisputed that no misrepresentations were made in its initial application for insurance in 1997, neither that policy, nor any renewals of that policy, nor any additional endorsements to that policy, are subject to rescission. Under this view, an insurance policy along with renewal of, and

18

endorsements to, that policy exist as a monolithic contract that may be rescinded based only on initial misrepresentations and only as a whole.

Jasam relies for this proposition on the general principle that insurance policy renewals are considered extensions of the initial policy -- and therefore not new contracts -- if there is a provision in the insurance policy requiring renewal, for which it cites 68A N.Y. Jur. 2d Insurance § 850. Because a misrepresentation under N.Y. Ins. Law § 3105 is to be evaluated "at or before the making of the insurance contract," or so the argument goes, the absence of a new contract would negate the possibility of misrepresentation under the statute.

Regardless of the merits of this argument, it has no bearing on the rescission of the renewals or endorsements of the particular insurance policy at issue in this case. New York law is clear that where an insurer has the absolute right to terminate a policy on its anniversary, each renewal does indeed represent a new policy. See Moore v. Metro. Life Ins. Co., 33 N.Y.2d 304, 312, 307 N.E.2d 554, 557, 352 N.Y.S.2d 433, 438 (1973). Although the Fidelity insurance policy at issue limits the insurer's ability to cancel the policy while it is in effect, it places no limit beyond a sixty-day notice period on Fidelity's right not to renew. Because Fidelity retained this right, each policy must be considered separately, and any misrepresentations made in the course of obtaining a renewal of the policy may be grounds for rescission.

19

Similarly, Fidelity was under no obligation to issue the requested endorsement to cover Crotona and the Crotona properties. Once an endorsement is issued -- whether by Fidelity itself or through an authorized agent such as Surre -- that endorsement is considered together with the policy proper and the application as a single instrument. See Massachusetts Mut. Life Ins. Co. v. Lord, 18 A.D.2d 69, 71, 238 N.Y.S.2d 222, 224 (1st Dep't), aff'd without opinion, 13 N.Y.2d 1096, 196 N.E.2d 266, 246 N.Y.S.2d 630 (1963) (citing Berkshire Life Ins. Co. v. Weinig, 290 N.Y. 6, 10, 47 N.E.2d 418, 421 (1943)). As with a discretionary renewal, Fidelity's acceptance (by Surre) of Jasam's request for coverage of the Crotona properties created a new insurance contract, and any misrepresentations made to induce the making of that contract may provide grounds for rescission.[8]

Jasam's presumably truthful statements in its initial application for insurance in 1997 therefore do not entitle it to judgment as a matter of law.

2. Waiver. Jasam also argues that Fidelity waived its right to rescind the insurance policy based on material misrepresentations, both by contract and by cancelling the policy

---

[8] Such a misrepresentation must, of course, be material. We have observed that under New York law, "nondisclosure of a fact concerning which the applicant has not been asked does not ordinarily void an insurance policy absent an intent to defraud," and "an applicant is ordinarily permitted to remain silent on matters concerning which he is not questioned. His insurance policy may be voided for concealment only when he conceals matters material to the risk and he does so in bad faith with intent to deceive the insurer." First Fin. Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 117-18 (2d Cir. 1999) (citations, internal quotation marks, and alteration omitted).

pursuant to the policy's terms without any reservation of its right of rescission. Although these arguments may have merit, we decline to resolve them at this time.

Jasam correctly observes that its insurance policy explicitly addressed the possibility that the insured might use "fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim." Where Fidelity discovers such a fraud or misrepresentation, the policy permits it to cancel the policy provided it mails "written notice at least 15 days before the effective date of cancellation." When Fidelity discovered that Jasam had begun construction on the Crotona properties, it complied with this provision by notifying Jasam on April 11, 2001, that the policy would be cancelled effective April 26, 2001, for "MATERIAL MISREPRESENTATION OF EXPOSURES." Cancellation Notice, Plaintiff's Trial Exhibit 38, at 2. It is not clear, however, whether under New York law the insurance policy's provision or the cancellation notice prevents Fidelity from seeking to rescind the same policy.

We are aware of only one decision addressing the issue of rescission following cancellation under New York law. In Stein v. Security Mut. Ins. Co., 38 A.D.3d 977, 832 N.Y.S.2d 679 (3d Dep't 2007), the Supreme Court, Appellate Division, concluded that even where a defendant insurer "could have rescinded [insured's] policy, rendering it void ab initio," based on material misrepresentations in the application for insurance, it was not free to do so once the insurer "elected to cancel [the] policy rather than rescind it." Id. at 978-79, 832 N.Y.S.2d at

21

681; see also 2004 Ops. N.Y. Ins. Gen. Counsel, Aug. 18, 2004, No. 6 (observing that neither the legislature nor the courts had determined whether an insurer's election of a cancellation remedy for misrepresentation precludes later rescission).

Similarly, it does not appear that any court has directly addressed the question whether, under New York law, an insurer waives its common-law right to rescind an insurance policy by limiting the conditions under which it would cancel the policy. The Appellate Division in Stein appears to have assumed that the insurer's statutory obligation to cancel a policy only with sufficient prospective notice in that case, see N.Y. Ins. Law § 3425, did not alone preclude a rescission remedy. The insurer was, however, required to elect one of these remedies.

We think it unwise to grant judgment as a matter of law to a party where, as here, the law is unclear and the issue may ultimately become moot after remand. The resolution of these questions of law may, moreover, have significant consequences for insurers that have selected New York law to govern their policies.

"Where unsettled and significant questions of state law will control the outcome of a case, we may certify those questions to the New York Court of Appeals." Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 229 (2d Cir. 2006) (citations and internal quotation marks omitted). Any certification in this case would, however, be premature. "In deciding whether to certify a question we consider: (1) the absence of authoritative state court decisions; (2) the

22

importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." O'Mara v. Town of Wappinger, 485 F.3d 693, 698 (2d Cir. 2007). Although the first two prongs of this test may very well be satisfied here, the errors in the district court's jury interrogatories could prevent resolution of this case even if we certified the question. If the New York Court of Appeals were to conclude that rescission was available to Fidelity, despite its cancellation of the policy in April 2001, we nonetheless would be required to remand. The outcome of this appeal does not turn on the issue. By remanding to the district court, as we do, these unsettled legal questions may be rendered moot if, for example, a jury returns a verdict favorable to the defendants.

For these reasons, we decline either to resolve, for purposes of this appeal, the merits of these arguments or to certify them to the New York Court of Appeals.

3. Estoppel. The defendants contend that the remedy of rescission is no longer available to Fidelity because it has retained all insurance premiums paid by Jasam and continued to accept premiums well after it could have rescinded the policy. "It is well settled that the continued acceptance of premiums by the carrier after learning of facts which allow for rescission of the policy, constitutes a waiver of, or more properly an estoppel against, the right to rescind," Scalia v. Equitable Life Assurance Soc'y, 251 A.D.2d 315, 315, 673 N.Y.S.2d 730, 731 (2d Dep't 1998) (citing Bible v. John Hancock Mut. Life Ins. Co., 256 N.Y. 458, 462, 176 N.E. 838, 840 (1931)). The facts underlying

23

this issue, however, were not developed at trial.  The defendants point to no evidence in the record, for example, that indicates when Fidelity learned of facts which would have allowed for rescission of the policy.  Were such evidence presented, moreover, there is no indication that Fidelity was provided the opportunity to explain to the jury any delay in exercising a right of rescission.  It is not even clear on the current record how long this delay was alleged to have been.

Because we would remand for retrial in any event, we also decline to resolve the merits of this argument.  See LNC Investments, Inc. v. First Fidelity Bank, 173 F.3d 454, 468-69 (2d Cir. 1999).[9]

## CONCLUSION

For the foregoing reasons, we vacate the judgment and remand the case to the district court.  The district court's judgment with respect to Surre is also vacated because it is dependent on the judgment with respect to the remaining defendants.

---

[9]  We reiterate our prior instruction that if the parties "want to have their contentions addressed upon the retrial, and any appeal therefrom, they have a responsibility to put forth the evidence upon which their contentions depend." Fidelity, 141 F. App'x at 13 n.1.